UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN BETTINA
WILLIAMS,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 2:17-cv-14047
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 8), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 8), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Carolyn Betting Williams, brings this action under 42 U.S.C. §§

405(g), 1383(c) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for disability insurance (DI)

and supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 8), the Commissioner's cross-motion for summary judgment (DE 12), Plaintiff's reply (DE 13), and the administrative record (DE 6).

### A.    Background and Administrative History

Plaintiff alleges her disability began on September 5, 2010, at the age of 45. (R. at 194, 196.)  In her disability report, she lists several conditions (herniated discs, chronic lower back pain, fractured right hand, rheumatoid arthritis (RA), carpal tunnel, fibromyalgia, hypertension, asthma, and migraines) that limit her ability to work.  (R. at 234.)  Her applications were denied on August 12, 2015. (R. at 89-118, 121-154.)

In September 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 157-158.)  On August 12, 2016, ALJ Therese Tobin held a hearing, at which Plaintiff and a vocational expert (VE), Diane Regan, testified. (R. at 50-88.)  On the same date, Plaintiff agreed to amend her date of onset to December 19, 2011.  (R. at 230.)  ALJ Tobin issued an opinion on September 15, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 34-49.)

Plaintiff requested review of the decision.  (R. at 22-23, 191-193.)  However, on October 18, 2017, the Appeals Council denied Plaintiff's request for review,

noting that the "additional evidence" did not "relate to the period at issue."  (R. at

1-7.)  Thus, ALJ Tobin's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 15, 2017.  (DE

1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 128 pages of medical

records, which were available to the ALJ at the time of her September 15, 2016

decision.  (R. at 49, 293-420 [Exhibits 1F – 8F].)  These materials will be

discussed in detail, as necessary, below.  In addition, Plaintiff submitted 16 pages

of additional material, which appear to have been available to the Appeals Council,

some of which are also touched upon in the footnotes which follow.  (R. at 2, 8-18,

29-33.)[1]

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 19, 2011, the alleged onset date.  (R. at

---

[1] These included Benjamin Osowa, M.D.'s notes dated October 24, 2016 (R. at 30-33), Dr. Osowa's November 3, 2016 letter (R. at 29), the May 17, 2017 notes of Samson Samuel, M.D. (R. at 15-18), the August 24, 2017 operative report of John B. Ryan, M.D. for Plaintiff's left knee surgery (R. at 13-14), and the October 10, 2017 notes of Dr. Samuel (R. at 8-12).  The Appeal's Council's October 18, 2017 letter expressly acknowledges only some of these items.  (*See* R. at 2.)  Still, each of them post-dates the ALJ's September 15, 2016 decision.

39.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: spine disorder and disorder of muscle, ligament, and fascia; asthma; fibromyalgia; osteoarthrosis; bilateral carpal tunnel syndrome (CTS); and affective disorder.  (*Id.* at 40.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at 40-42.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires a sit/stand option, permitting change in position, every 20 minutes, without disturbing the work place [*i.e., exertional limitations*].  She can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds.  She can occasionally balance and stoop.  She can never kneel, crouch, and crawl [*i.e., postural limitations*]. She can frequently handle bilaterally [*i.e., manipulative limitations*].  She should avoid concentrated exposure to extreme cold and extreme heat.  She should avoid concentrated exposure to humidity, vibration, dusts, odors, fumes, and pulmonary irritants.  She should avoid concentrated exposure to extreme heights and moving mechanical parts [*i.e., environmental limitations*].  She is limited to simple, routine tasks [*i.e., mental health limitations*].  She requires a cane or walker to ambulate during the workday [*i.e., exertional limitations*].

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(*Id*. at 42-44.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 45.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id*. at 45-46.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 19, 2011, through the date of the decision.  (*Id*. at 46.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff purports to raise two issues for review: (1) "[t]he findings on the medical evidence as stated by the ALJ are not supported by substantial evidence on the record as a whole[;]" and, (2) "[t]he record contains omissions and inaccuracies that demonstrate that the Decision of ALJ Tobin is in violation of standards set for disability claims." (DE 8 at 3.) These statements of error are too general to serve as a meaningful guide to the Court. However, the argument section of her brief is categorized as follows: (1) "The ALJ erred in her review on the intensity of symptoms[;]" (2) "The report of Dr. Benjamin Os[o]wa dated July 22, 2016[;]" and, (3) "The ALJ's RFC findings ([R. at 42]) are not supportable." (DE 8 at 8-11.) The discrepancy between the "Issues Raised" section in Plaintiff's brief and the substantive argument sections of the brief do not comply with my Practice Guidelines for Social Security cases, which state that: "Within the parties' briefs, the issues presented should be labeled as section headings, and should match the items listed on the 'Issues Presented' page. Any issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the brief, will not be considered by the Court." *See* www.mied.uscourts.gov (emphasis in original).

In the interest of fairness to Carolyn Williams, the Court will do its best to reconcile the deficiencies and interprets Plaintiff's arguments as challenging the

ALJ's credibility determination and the RFC handling limitations.[3]  The

Commissioner argues that "[t]he ALJ properly evaluated Plaintiff's subjective

complaints[,]" and "[s]ubstantial evidence supports the handling limitations in the

RFC."  (DE 12 at 7-16.)

## 1.    Credibility and 20 C.F.R. §§ 404.1529, 416.929

"In determining whether you are disabled," the Social Security

Administration considers "all your symptoms, including pain, and the extent to

which your symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The

ALJ concluded that Plaintiff's "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record . . . ."  (R. at 44.)  Plaintiff alleges that

the purported inconsistencies are "demonstrably absent[,]" (DE 8 at 8-9), and the

Court will individually address each of the ALJ's 4 supporting paragraphs.

### a.    Characterization of Dr. Yahia and Dr. Samuel's notes

Within a review of Plaintiff's musculoskeletal conditions, the ALJ cited the

May 11, 2015 notes of Samir Yahia, M.D. for Plaintiff's complaints of "pain and

---

[3] In reply to Defendant's response regarding Plaintiff's mental restrictions, Plaintiff contends that the ALJ's limitation of "simple, routine tasks" (R. at 42) "does not actually take Dr. Hasan's opinion as given."  (DE 13 at 2 ¶ 1.)  If Plaintiff intended to challenge the ALJ's mental health limitations, no such *developed argument* is contained within her motion for summary judgment.  (*See* DE 8 at 8-11.)

swelling in both hands" and "knee pain and swelling[,]" as well as Dr. Yahia's

objective observations of "tenderness in the small joints of the hands[,]" and

"limitation of range of motion in both wrists." (R. at 43, 338.) Moreover, the

ALJ's apparent misinterpretation of Dr. Yahia's note that Plaintiff had "tenderness

involving the *right knee*" inured to Plaintiff's benefit in the decision, which noted

"tenderness in *her knees* . . . ." (*Compare* R. at 43, 338 (emphases added).)

Within what amounts to a credibility discussion, the ALJ acknowledged

Plaintiff's complaints of "severe pain and symptoms," but then concluded that "the

record demonstrates normal findings." (R. at 44.) The ALJ supported this

conclusion with reference to Dr. Yahia's May 11, 2015 notes (R. at 338-340) and

the June 29, 2015 notes of Samson Samuel, M.D. (R. at 343-345), as follows:

> In May 2015, although the claimant exhibited limited range of motion
> in her hands and knees, physical examination further revealed, normal
> reflexes, muscle tone, and coordination as well as no evidence of
> effusion or ankle swelling (Ex. 3F, pgs. 22-23). In June 2015, the
> claimant demonstrated normal gait and station and "was able to
> undergo exercise testing and/or participate in exercise program" (Ex.
> 3F, pg. 28).

(R. at 44.)

### i.    Dr. Yahia's May 11, 2015 notes

Plaintiff takes issue with the ALJ's characterization of these pieces of

evidence. (DE 8 at 9.) First, Dr. Yahia's objective musculoskeletal findings noted:

> Joint examination reveals the presence of tenderness in the small
> joints of the hands. There is limitation of range of motion of PIP

[proximal interphalangeal] joints and MCP [metacarpophalangeal] joints. There is limitation of range of motion in *both wrists*. She has tenderness involving the *right knee* with no evidence of effusion there is no ankle swelling. She has limitation of range of motion of the *lumbosacral spine and cervical spine*.

(R. at 338 (emphases added).) And, Dr. Yahia prescribed Norco (hydrocodone-acetaminophen). (*Id*.)

The Commissioner admits that the ALJ erred in recording Dr. Yahia's findings but "denies that it alters the ALJ's conclusion." (DE 12 at 10 n.3.) To the extent Plaintiff claims that the ALJ's credibility discussion omitted reference to limitation of motion in her wrists, the ALJ included it earlier in the decision. (DE 8 at 9; R. at 43, 338.) To the extent Plaintiff argues that the ALJ omitted mention of the Norco prescription, "pain medication" was mentioned at least twice during the administrative hearing. (R. at 63, 65.) Finally, Plaintiff contends that the ALJ omitted Dr. Yahia's objective observation that Plaintiff "has limitation of range of motion of the lumbosacral spine and cervical spine." (DE 8 at 9, DE 13 at 2 ¶ 2, R. at 338.) Yet, Dr. Yahia's objective neurological examination noted normal reflexes, muscle tone and coordination. (R. at 339.) Also, the April 25, 2015 lumbar spine MRI, which took place 16 days before her visit with Dr. Yahia, was addressed in detail by the ALJ, including diffuse posterior disc bulging at L4-S1, disc herniation at L5-S1, possible impingement upon the adjacent right nerve root at L5-S1, and impingement upon the neural foramen from L4 through S1. (R. at

43, R. at 326-327.)  Similarly, although not by date, the ALJ noted that the

February 11, 2009 cervical spine x-ray showed "[m]inimal degenerative changes at

C5."  (R. at 43, 347.)  Thus, it cannot be said that the ALJ was unaware of the

limitation of motion in Plaintiff's wrists, the fact that Plaintiff took pain

medication, or the condition of her lumbar and cervical spine.

### ii.    Dr. Samuel's June 29, 2015 notes

Second, Plaintiff contends that Dr. Samuel's June 29, 2015 examination

"was concentrating on the upper extremities and the gait and station comment was

in connection with her ability to undergo the testing on the upper extremities and

not a general finding."  (DE 8 at 5, 9.)  Preliminarily, Dr. Samuel's June 29, 2015

notes were expressly considered in the August 2015 disability determination

explanation.  (R. at 95, 110.)  More to the point, the ALJ's September 15, 2016

characterization of this piece of evidence – "[i]n June 2015, the claimant

demonstrated normal gait and station and 'was able to undergo exercise testing

and/or participate in exercise program'[,]" – *accurately* describes Dr. Samuel's

objective musculoskeletal notes that "[e]xamination of gait and station is

normal[,]" and parenthetical opinion that Plaintiff was "able to undergo exercise

testing and/or participate in [an] exercise program[.]"  (R. at 44, 344.)  Simply put,

the ALJ accurately cited this information within the credibility discussion.

Plaintiff also points out that Dr. Samuel's report predates her September 15, 2015 back surgery and Dr. Osowa's June 3, 2016 observation of antalgic gait. (DE 13 at 2-3 ¶ 3, R. at 395-396, 402.)  This is true.  However, the ALJ used "June 2015" to reference Dr. Samuel's June 29, 2015 notes.  (R. at 44.)  The ALJ expressly mentioned Plaintiff's lumbar interbody fusion, albeit not by its September 15, 2015 date.  (R. at 43.)  In addition, the ALJ used "June 2016" to reference Dr. Osowa's June 3, 2016 notes, which the ALJ offered as evidence of "post-operative improvement in her lumbar spine."  (R. at 44.)  Thus, even if the ALJ did not realize that Dr. Samuel's June 2015 notes pre-date Plaintiff's September 2015 back surgery, the ALJ was aware that Dr. Samuel's notes and Plaintiff's back surgery each pre-date Dr. Osowa's June 3, 2016 notes, *i.e.*, Dr. Osowa's notes are the latest of these three events.[4]

**b.     Characterization of Dr. Osowa's June 3, 2016 notes**

Plaintiff also takes issue with the ALJ's treatment of Dr. Osowa's July 22, 2016 report.  (DE 8 at 10 ¶ 2.)  By way of background, Plaintiff's surgery occurred on September 15, 2015, she had a CT myelogram on December 16, 2015, she saw

---

[4] In addition, as the Commissioner points out, Dr. Samuel's June 29, 2015 note that "[e]xamination of gait and station is normal . . . [,]" conflicts with her April 13, 2015 notation that she uses a cane.  (DE 12 at 11, 249, 344.)  Still, as noted above, the RFC notes that Plaintiff "requires a cane or walker to ambulate during the workday."  (R. at 42.)

Dr. Osowa on April 9, 2016, and Dr. Ryan made note of her back on May 25, 2016.  (DE 13 at 3 ¶ 4, R. at 395-396, 402, 412.)  Within the credibility discussion, the ALJ cited Dr. Osowa's *June 3, 2016* notes as an endorsement of "post-operative *improvement* in her lumbar spine," explaining:

> In June 2016, the claimant reported that she had "notice a great deal of *difference* after surgery" (Ex. 7f, pg. 3).  Physical examination revealed *full strength* (Ex. 7F, pg. 3).

(R. at 44 (emphases added).)  In fact, these notes document Plaintiff's statement that "she has noticed a great deal of difference after the surgery."  (R. at 402.) While the ALJ's first citation is accurate, the ALJ's second citation may not be, because the objective motor system examination found that Plaintiff's "[s]treng[th] is limited by pain but is at least 5-/5 . . . ."  (*Id*.)[5]  Plaintiff does not appear to base her appeal on a discrepancy in strength, as she states, "strength which the ALJ cited as full was stated however also to be limited by pain."  (DE 8 at 10.)

In any event, Plaintiff claims that this is an incomplete and inaccurate evaluation of Dr. Osowa's notes and that she noted a *difference* in pain, not an *improvement*.  (DE 8 at 10.)  While Plaintiff did report that "the pain does not radiate into the left lower extremity[,]" she also stated:

---

[5] As the Appeals Council acknowledged, the November 3, 2016 letter from Dr. Osowa and the October 24, 2016 records from Cornerstone Medical Group post-date the ALJ's September 15, 2016 decision at issue in this appeal.  (R. at 2, 29-33, 34-49.)

- "she has pain in the lower back that at times radiates into the right lower extremity."

- "the back is painful to the touch[.]"

- "she can feel the hardware."

- "she has right sided weakness."

- "she had four falls because her right leg gives out on her."

- "the pain appears not to be improving, pain is in the lower back along the incision and in the RLE."

- "the pain medications do help but she is concerned that the surgery did not provide a great deal of relief."

(R. at 402.)  In addition, Dr. Osowa's objective musculoskeletal examination noted paraspinal tenderness and incision pain, and his assessment was that Plaintiff's surgery three months prior – presumably the September 15, *2015* back surgery (R. at 395-396) – had "limited benefit."  (*Id*.)  He continued her prescription for Percocet.  (*Id*.)

In essence, Plaintiff claims that the ALJ's assessment of Dr. Osowa's June 3, 2016 notes "is at sharp odds with" Dr. Osowa's assessment and does not support the ALJ's evaluation.  (DE 8 at 10.)  Nonetheless, it appears that the ALJ only cited this piece of evidence within the credibility section.  (R. at 44.)  And, Plaintiff is not challenging the RFC's exertional or postural limitations, only the handling limitation, which will be discussed further below.  More importantly, Dr. Osowa

noted, *inter alia*:  "She states that *prior to* surgery, she had low back pain and leg pain in which her legs would give out all the time.  She states that she has noticed a great deal of difference *after* the surgery."  (R. at 402 (emphases added).) Therefore, even if the ALJ had acknowledged Dr. Osowa's apparent opinion that the back surgery had provided "limited benefit," (*id*.), the ALJ was materially accurate in quoting Plaintiff's statement to her physician − "she had 'notice[d] a great deal of difference after [the] surgery'" − and reasonably characterized it as "post-operative *improvement* in her lumbar spine."  (R. at 44 (emphasis added).)

### c.   Characterization of Plaintiff's April 13, 2015 adult function report

In another paragraph, the ALJ stated:

> Through an *Adult Function Report,* the claimant stated that she was able to fix simple meals and occasionally do her laundry (Ex. 3E [R. at 243-250]).  Although these activities do not establish the ability to maintain substantial gainful activity, they do suggest a greater ability to stand and walk [than] the claimant's subjective allegations of pain and dysfunction would suggest.

(R. at 44.)  Here, the ALJ was referring to Plaintiff's April 13, 2015 adult function report, which reflects that:  **(i)** Plaintiff prepares her own meals, although she uses the microwave a lot and has difficulty cooking meals that require time standing; and, **(ii)** she sometimes does laundry (about twice a week), although she needs help to do it.  (R. at 245.)

Plaintiff contends that this report, which the ALJ expressly cited within the Step 3 and RFC discussions (R. at 41, 43-44), pre-dates her September 15, 2015 back surgery and her February 17, 2016 left hand surgery. (DE 8 at 9, 395-396, 397-399.) In Plaintiff's opinion, these activities do not show a "greater capacity to stand and walk than Plaintiff testified[,]" but, even if they did, "it does not come anywhere close to equating with what is needed for gainful activity." (DE 8 at 9-10.)

Preliminarily, as just noted above, the ALJ was materially accurate in quoting Plaintiff's statement to her physician and reasonably characterized it as "post-operative *improvement* in her lumbar spine." (R. at 44 (emphasis added).) Also, the records which post-date the February 17, 2016 operative report do not appear to concern Plaintiff's wrists (*see* R. at 410-420.) Thus, even if the ALJ had acknowledged Dr. Osowa's apparent opinion that the back surgery had "limited benefit," the Commissioner is correct that Plaintiff "has not shown how her self-reported activities from April 2015 were less valid in light of later surgical procedures." (DE 12 at 13.)

### d.    Characterization of "conservative treatment"

In sum, the ALJ stated: "the objective medical records, medical opinions, as well as the subjective complaints of the claimant support the residual functional capacity outlined above. Although the medical evidence of record confirms the

claimant's diagnoses, the conditions have produced no greater restrictions than those identified and have been managed with *conservative treatment*.  Therefore, the claimant is able to sustain work as described above."  (R. at 44 (emphasis added).)

Although Plaintiff acknowledges conservative management of her knee pain in May 2016 (*see* R. at 410-412), she further points to:  **(i)** the September 15, 2015 operative report for her back surgery, which states:  "She failed conservative treatment and felt that surgery was her last option[;]" and, **(ii)** the February 17, 2016 operative report for her left-hand surgery, which states that Plaintiff "had failed conservative management[,]" (R. at 395, 397).  However, even if these observations add "strong support for her complaints of pain and disability[,]" it does not necessary mean that the ALJ "failed to comprehend what the record contains."  (DE 13 at 3-4 ¶ 6.)  In fact, the ALJ clearly *did* comprehend that not *all* of Plaintiff's treatment was conservative, as the opinion noted both Plaintiff's back surgery and left-hand surgery.  (R. at 43, 395-396, 397-399.)  However, *some* of her treatment *was* conservative, as her attorney acknowledges.  It was not inappropriate for the ALJ to factor this in when considering the credibility of Plaintiff's function report or testimony.

### e.    Summation

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Moreover, an ALJ's "credibility findings are virtually 'unchallengeable.'" *Ritchie v. Commissioner of Social Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-113 (6th Cir. 2010)).  The credibility determination must stand so long as it is supported by substantial evidence.  *McGrath v. Comm'r of Soc. Sec.*, 12-11267, 2013 WL 4507948, at *4 (E.D. Mich. Aug. 23, 2013) (Goldsmith, J., *accepting and adopting the report and recommendation of* Hluchaniuk, M.J.).  And, the Court may not disturb the ALJ's credibility determination "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ's credibility discussion discussed many of the factors set forth in the appropriate regulation.  First, the ALJ considered "normal findings[,]" by pointing to Dr. Yahia's May 11, 2015 notes and Dr. Samuel's June 29, 2015 notes. (R. at 44, 338-339, 344.)  Therefore, the ALJ considered objective medical evidence.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption.").  Second, having already

determined that Plaintiff was mildly restricted in her activities of daily living,

which is consistent with state agency consultant Dr. Morrow's July 9, 2015

opinion on this issue, the ALJ used Plaintiff's function report to discount her

credibility.  (R. at 41, 44, 96, 111, 245.)  As such, the ALJ considered Plaintiff's

"daily activities[.]"  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).)  Third, the

ALJ noted Plaintiff's back surgery and February 17, 2016 left hand surgery.  (R. at

43, 395-396, 397-399.)  Thus, the ALJ considered "[t]reatment, other than

medication, you receive or have received for relief of your pain or other

symptoms[.]"  20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).)  Plaintiff not

having shown harmful error in the ALJ's characterization of Dr. Yahia's, Dr.

Samuel's, or Dr. Osowa's notes, or in the ALJ's characterization of Plaintiff's

adult function report, or with respect to the ALJ's observation regarding

conservative treatment, the ALJ's credibility determination should stand.

### 2.    Manipulative limitations

#### a.    The ALJ concluded that Plaintiff could "frequently handle bilaterally."

The August 2015 disability determinations considered Plaintiff's

manipulative limitations:  reaching any direction (including overhead), handling

(gross manipulation), fingering (fine manipulation), and feeling (skin receptors).

(R. at 98-99, 113-114.)  The determinations acknowledged Plaintiff's March 17,

2009 left carpal tunnel release, synovectomy, median neurolysis and manipulation

of stiff fingers.  (R. at 95, 110; *see also* R. at 293-296, 348-351.)  State agency

medical consultant Sonia Ramirez-Jacobs, M.D. concluded that each of Plaintiff's

hands were limited in the ability to handle, and further opined that "[l]ifting with

both hands" was "limited to no more than 10 [pounds] frequently[.]"  (R. at 99,

114.)  In addition, the assessment of vocational factors provided the following

explanation for why Plaintiff could not perform her past jobs:

> Her past jobs are all semi-skilled.  She has a PRTF [Psychiatric
> Review Technic Form] for simple unskilled jobs.  Also she has a light
> RFCA that requires she 'handles' on occasion bilaterally.  Her past
> jobs all require frequent handling.  She can return to simple unskilled
> light work.

(R. at 102, 117.)  "Occasionally" means that "the activity or condition occurs *at*

*least once* up to one-third of an 8-hour workday."  POMS DI 25001.001(A)(53)

(emphasis added).

During the August 12, 2016 hearing, Plaintiff agreed that she has had two

surgeries on her left hand.  (R. at 72.)  Presumably, these are references to Dr.

Mendelson's March 17, 2009 operative report (R. at 348-349, 293-294) and Dr.

Samuel's February 17, 2016 operative report (R. at 397-399).  Plaintiff also

testified that Dr. Samuels would perform carpal tunnel surgery on her right hand,

which she believed would take place the following month (September 2016).  (*Id.*)[6]

---

[6] In notes dated October 10, 2017, a date following the ALJ's decision, Dr. Samuel
acknowledged a "need for future surgery," presumably related to Plaintiff's right
wrist.  (R. at 11.)

20

The ALJ examined the VE about frequently handling bilaterally, "correctly" handling bilaterally, and occasionally handling bilaterally.  (R. at 81-83.)[7]  The VE agreed that changing to occasional handling bilaterally would take an individual out of light exertional work and place him/her into sedentary work.  (R. at 83.)

As noted above, at Step 2, the ALJ concluded that bilateral CTS was among Plaintiff's severe impairments.  (R. at 40.)  Within her RFC assessment, the ALJ concluded that Plaintiff "can frequently handle bilaterally."  (R. at 42.)  The ALJ's discussion of Plaintiff's musculoskeletal conditions included the following paragraph:

> The record further documents a history of bilateral carpal tunnel syndrome and asthma (Ex. 1F, 2F, 4F).  In February 2016, the claimant underwent a release of the A1 pulley and tenolysis of flexor digitorum superficialis and flexor digitorum profundus left middle finger and left ring finger (Ex. 6F, pg. 2).

(R. at 43.)  Thus, it seems that the ALJ supported his statements within this paragraph with references to: **(a)** the March 17, 2009 operative report of David H. Mendelson, M.D. (R. at 293-296 [Ex. 1F], 348-351 [Ex. 4F]); **(b)** the June 22, 2015 consultative examination (CE) report of psychiatrist R. Hasan, M.D. (R. at

---

[7] While the court notes a difference between the hearing transcript and the RFC statement, *i.e.*, "correctly handle bilateral" v. "frequently handle bilaterally" (*compare* R. at 82, R. at 42), the Court assumes this is a transcription error.

313-316 [Ex. 2F]); and, **(c)** Dr. Samuel's February 17, 2016 operative report (R. at

397-399 [Ex. 6F]).

> **b.**   **The inspector and hand packer, scrap sorter and electric accessories assembler jobs require frequently handling.**

Plaintiff challenges the ALJ's conclusion that she can "frequently handle

bilaterally." (DE 8 at 11, R. at 42.)  Noting Plaintiff's "ongoing problems" and

"recent carpal tunnel/stenosing tenosynovitis surgery," Plaintiff claims that the

ALJ's statement is unsupported by the record, there is no evidence that Plaintiff

has this ability, and "[t]he ALJ cites nothing in the medical records that would

support this finding in a claimant who has had two carpal tunnel surgeries." (*Id.*)

Plaintiff further asserts that she does not qualify for any of three positions

regarding which the VE testified and which provided support for the ALJ's Step 5

determination. (*Id.*)

At the hearing, when posed with a hypothetical consistent with the RFC

eventually adopted by the ALJ, the VE testified that such an individual could

perform the jobs of a packer (559.687-074), a sorter (788.687-106), and an

assembler (729.687-010), although the numbers would be reduced by 50% from

the prior hypothetical, *i.e.*, reduced to 150,000 jobs, 100,000 jobs, and 150,000

jobs, respectively, clearly still "significant numbers in the national economy . . . ."

(R. at 45; *see* also R. at 81-82.)  The ALJ cited these positions and numbers in

support of her Step 5 conclusion. (R. at 45-46.) These positions are described as "light work" with significant handling and frequent handling (exists from 1/3 to 2/3 of the time). *See* 559.687-074 INSPECTOR AND HAND PACKAGER, DICOT 559.687-074; 788.687-106 SCRAP SORTER, DICOT 788.687-106; and, 729.687-010 ASSEMBLER, ELECTRICAL ACCESSORIES I, DICOT 729.687-010.[8] In addition, the assembler position involves "Eye-Hand-Foot Coordination: Level 4 - Lowest 1/3 Excluding Bottom 10%[.]" To the extent Plaintiff cites the corresponding job descriptions as evidence that "[t]hese jobs are all beyond two-thirds hand usage and thus *questionably* in the light category[,]" (DE 13 at 4-6 ¶ 7 (emphasis added)), it is not within this Court's purview to consider the accuracy of the Dictionary of Occupational Titles.

### c. There is support in the record for this limitation.

As noted above, state agency medical consultant Dr. Ramirez-Jacobs concluded that each of Plaintiff's hands were limited in the ability to handle and further opined that "[l]ifting with both hands" was "limited to no more than 10 [pounds] frequently[.]" (R. at 99, 114.) In formulating her exertional assessments, Dr. Ramirez-Jacobs acknowledged Plaintiff's CTS and right wrist fracture. (R. at

---

[8] In the Social Security context, "frequently" means "one-third to two-thirds of an 8-hour workday." POMS DI 25001.001(A)(33); *see also* SSRs 83-10, 83-14, 85-15.

98, 113.)  Then, when explaining her environmental limitations, Dr. Ramirez-Jacobs noted, *inter alia*, that Plaintiff "cannot operate hazardous moving machinery & should avoid frequent push/pull movement of both hands[.]"  (R. at 99, 114.)

To be clear, Plaintiff has not put forth a developed challenge to the ALJ's treatment of the opinion evidence in this case, such as psychiatrist Dr. Hasan's CE report (R. at 313-316 [Ex. 2F]) or the opinions of state agency medical consultants Dr. Ramirez-Jacobs and Kathy A. Morrow, Ph.D. (R. at 97-101 [Ex. 2A], 112-116 [Ex. 4A]).  Even if Dr. Ramirez-Jacob's August 4, 2015 physical RFC assessment suggested a stricter handling limitation than that eventually assigned by the ALJ, the ALJ's review of Plaintiff's musculoskeletal conditions noted:

**(i)**  Dr. Yahia's May 11, 2015 notes (R. at 338-340);

**(ii)**  Plaintiff's history of bilateral CTS, in support of which the ALJ appears to refer to the March 17, 2009 operative report of David H. Mendelson, M.D. (R. at 293-296, 348-351) and the June 22, 2015 CE report of psychiatrist R. Hasan, M.D. (R. at 313-316); and,

**(iii)**  Plaintiff's February 2016 left hand surgery by Dr. Samuel (R. at 397-399).

(R. at 43-44.)

Moreover, the Commissioner appears to be correct that, *following* Dr. Samuel's February 17, 2016 operative report, "there are no treatment notes for wrist complaints through the date of the ALJ's September 2016 decision[,]" (DE

24

12 at 15), because:  **(i)** the June 3, 2016 records from Cornerstone Medical Group (CMG / Benjamin Osowa, M.D.) concern back pain and lower extremities (R. at 401-402); **(ii)** the July 19, 2016 records from CMG / Dr. Osowa appear to have concerned a prescription for Wellbutrin SR for depressive disorder and a referral to Ryan C. Pollina for pain medicine [in connection with her lower back pain that "at times radiates into the right lower extremity"] (R. at 400, 403-406); and, **(iii)** the May to July 2016 records from Jack Ryan, M.D., relate to Plaintiff's right knee (R. at 410-420).[9]  Plaintiff's RFC statement of error, which seemingly refers to Plaintiff's March 17, 2009 and February 17, 2016 CTS surgeries, one of which pre-dates the December 19, 2011 onset date, as well as "ongoing problems," does not convince the Undersigned that there is "no evidence that Claimant has the ability cited."  (DE 8 at 11.)

> **d.**   **The effect of frequent versus occasional handling upon the exertional limitations of light versus sedentary work**

The Commissioner expresses confusion over Plaintiff's statement that her April 13, 2015 adult function report pre-dates July 6, 2015, which is her 50th birthday.  (DE 12 at 13-14, DE 8 at 9.)  It seems to the Court that Plaintiff is tangentially challenging the ALJ's adoption of *frequent* instead of *occasional*

---

[9] The July 2015 records do mention CTS (*see* R. at 407-409), but these records pre-date the February 17, 2016 operative report.

bilaterally handling.  (DE 8 at 6, 8, 12.)  Given the VE's agreement that changing to occasional handling bilaterally would take an individual out of light exertional work and place him/her into sedentary work (R. at 83), Plaintiff claims that, even if she has the RFC to perform sedentary work, "an onset date of July 5, 2015, her 50th birthday[,] would be appropriate pursuant to Vocational Rule 201.14."  (DE 8 at 11-12.)  In other words, a finding of occasional bilateral handling, which would result in sedentary work, would mean that Plaintiff "should be found disabled as of her 50th birthday . . . ."  (DE 13 at 3 ¶ 5.)  Still, Plaintiff not having shown her entitlement to occasional bilateral handling limitations, the Court need not entertain this tangent.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error, and she has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 8), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 19, 2019                    s/*Anthony P. Patti*
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE

27

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2019, electronically and/or by U.S. Mail.

<div style="margin-left: 40%;">

s/Michael Williams         

Case Manager for the
Honorable Anthony P. Patti

</div>